**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAY & ZIMMERMAN, INC., ET. AL.,** | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 11-6008** |
| **SOC-SMG, INC.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

Plaintiffs, Day & Zimmermann, Inc. & The Day & Zimmerman Group, Inc. in the

instant action filed a complaint to vacate an arbitration award. Defendant Security Operations

Consulting-Security Management Group ("SOC-SMG") in whose favor the arbitration award

was entered, now moves for the dismissal of the action and summary confirmation of the award.

In light of the following, the Court will deny Defendant's motion to dismiss the complaint.

Nevertheless, because Plaintiffs have failed to show that they are entitled to relief, the Court will

grant Defendant's motion to confirm the arbitration award as it pertains to both the Interim

Award and Final Award.

## FACTUAL BACKGROUND

Plaintiff, Day & Zimmerman, Inc., (hereinafter "DZI"), is a Maryland corporation with its

principal place of business in Philadelphia, Pennsylvania.  Plaintiff, The Day & Zimmerman

Group, Inc., (hereinafter "DZG"), is a Delaware corporation with its principal place of business

in Philadelphia, Pennsylvania.  DZI provides, among others, national defense and security

services. DZI is a wholly owned subsidiary of DZG and conducts DZG's national defense

businesses.  Defendant, Security Operations Consulting-Security Management Group (hereinafter

"SMG"), is a Nevada corporation with its principal place of business in Minden, Nevada.  SMG provides international armed security services.  (Compl.  ¶¶ 4-8.)

On November 8, 2007, DZI and SMG entered into an agreement (the "Contribution Agreement") for the purpose of forming a new company, called Secure Our Country, LLC ("SOC").[1]  Under the Contribution Agreement, SMG and DZI agreed that DZI would be the majority owner of SOC and hold a 60% interest.  Because the assets contributed by SMG were more valuable than those contributed by DZI, DZI agreed to purchase 22% of SMG's interest for $42 million, of which $30 million was paid in cash at closing and $12 million was in the form of a Promissory Note ("Note").  In addition to the $42 million, DZI also provided a guarantee that SMG would receive $24 million in distributions from SOC over its first three years of operation commencing on January 2, 2008.  (Compl.  ¶¶ 9-10.)

Not long after closing, DZI claimed that it discovered what appeared to be irregularities in SMG's 2006 and 2007 financial statements.  As a result, on July 10, 2008, DZI delivered a formal Notice of Claims to SMG alleging that SMG breached representations and warranties pursuant to Section 9.3(a) of the Contribution Agreement because SMG's 2006 and 2007 financial statements materially overstated SMG's earnings and were not in compliance with Generally Accepted Accounting Principles ("GAAP").   (Pls.' Brief in Opposition to Def.'s Mot. to Dismiss, 4).

On December 31, 2008, DZI notified SMG that it intended to withhold payments under the Note as an offset against SMG's liability to DZI.  Thereafter, on January 30, 2009, DZI sent

---

[1]  SOC functions to provide private security services for the United States Military in high-threat markets such as Iraq and Afghanistan.

SMG a restated formal Notice of Claims alleging that SMG had twice breached the Contribution

Agreement by breaching its financial representations and warranties and by failing to notify DZI

in writing of the U.S. Army's switch from sole source contracting in Iraq to competitive bidding[2]

which DZI claimed constituted a Material Adverse Effect ("MAE")[3] on SMG's business.

(Compl. ¶¶ 11-14, 19.)

**Arbitration Hearing and Interim Award**

After several unsuccessful attempts to resolve the cited disagreements, on April 15,

2009, SMG filed a Notice of Claims (the "Arbitration") against DZI with JAMS.[4]  On May 22,

2009, DZI filed an Answer to SMG's Notice of Claims and a Notice of Counterclaims.  On

August 13, 2009, SMG filed a First Amended Notice of Claim, alleging, inter alia, that DZI had

mismanaged SOC and breached the Contribution Agreement by failing to pay the Note and by

instructing SOC not to make distributions to SMG pending the outcome of the Arbitration.[5]  On

---

[2]  Sole source occurred where the government contracting officer would approach a company, provide it with specifications for a particular job, and negotiate a price with that single company.  Competitive bidding occurred when the government entertained a number of bids for a specified job and normally awarded the contract to the lowest qualified bidder. (Interim Award of Arbitrators, p. 11, June 28, 2011.)

[3]  The Agreement defines "material adverse effect" as a material adverse effect on business operations, financial condition, results of operation or prospects taken as a whole.

[4]  Section 11.2(e) of the Contribution Agreement contained an arbitration provision that required that any dispute, claim or controversy arising out of or relating to the contract be determined by arbitration administered by JAMS.

[5]  Specifically, SMG alleged that DZI breached the Contribution Agreement, which required DZI to execute a promissory note for $12 million payable to the SMG owners in three installments: $5 million payable on January 2, 2008; $4 million payable on January 2, 2009; and $3 million payable on January 2, 2010.  SMG also claimed that the SMG owners were entitled to an additional $24 million, payable within thirty-six months after the January 2, 2008 closing, pursuant to Section 3.4(a) of the Contribution Agreement.  Finally, SMG claimed that it was

September 4, 2009, DZI filed an Answer to SMG's First Amended Notice of Claim and Notice

of Counterclaims denying any liability to SMG and seeking rescission of the Contribution

Agreement, or in the alternative money damages.[6]  (Compl. ¶¶ 17-18.)

   An Arbitration hearing was conducted over nineteen days in January and February

2011before a panel of three arbitrators.  On June 28, 2011, the panel issued an "Interim Award"

dismissing the counterclaims of DZI and DZG.  Specifically, the Panel concluded that SMG had

not concealed anything from DZI and that DZI's actual knowledge of the relevant facts precluded

SMG from being liable for fraud under Delaware law.  Similarly, the Panel found that SMG's

financial statements were GAAP-compliant, rejecting DZI's claims that SMG's 2006 and 2007

financial statements were not GAAP-compliant because it had not properly matched

demobilization revenues with related demobilization costs and had failed to properly account for

vacation and bonus costs.  The Panel also rejected DZI's claim that SMG breached the

---

entitled to $734,578 pursuant to Section 3.3(d) of the Contribution Agreement for post-closing
adjustments. With the exception of $2.7 million distributed by SOC to SMG on June 4, 2010, all
distributions otherwise payable by SOC to SMG pursuant to the contribution Agreement were
withheld by SOC pursuant to DZI's claim of offset.  (Compl. ¶ 15; Interim Award of Arbitrators,
June 28, 2011.)


  [6] By way of answer and counterclaim, DZI asserted two breach of contract claims and two
fraud claims under Delaware law.  First, DZI alleged that SMG breached Section 4.5 of the
Contribution Agreement that required SMG to prepare its financial statements in accordance with
GAAP.  DZI also claimed that SMG breached two sections of the Contribution agreement,
Section 4.7(1) and Section 6.4, respectively, that  required SMG to advise DZI, in writing, of any
MAE that occurred between December 31, 2006 and November 8, 2007 or any MAE that SMG
had knowledge of between November 8, 2007 and January 2, 2008.  With regard to the fraud
claims, DZI claimed that SMG fraudulently concealed that fact that the government switched its
contract awards from sole source to competitive bidding.   Second, DZI argued that SMG
misrepresented that the loss of two large contracts and reduced revenue would not affect the
profitability of SMG's contributed assets.  (Interim Award of Arbitrators, p. 11, June 28, 2011.)

Contribution Agreement by failing to notify DZI in writing of the U.S. Army's switch from sole source contracting in Iraq to competitive bidding. The Panel reasoned that no writing was necessary because DZI had actual knowledge of the switch and proceeded with the deal. The Panel further held that even if SMG's alleged inaction constituted a breach, it was excused by Section 9.6 of the Contribution Agreement which absolved SMG from liability for any conduct "reasonably attributable to the general state of the industy". At the conclusion of the hearing, the Panel awarded SMG $35,342,327 in damages, plus its reasonable attorney fees and costs incurred to collect on the $12 million promissory note. Thereafter, the Panel directed SMG to submit a fee petition within thirty (30) days of the Award. (Compl. ¶¶ 19- 21; Def.'s Mot. To Confirm Final Arbitration Award, 5.)

### SMG's Fee Petition

On July 12, 2011, SMG submitted a Petition for Legal Fees and Costs, totaling $5,889,158.53. SMG argued that it was entitled to not only those fees and costs necessary for collection of the Note, but for all of its fees and costs incurred in the Arbitration because they were inextricably intertwined with its enforcement of the Note. SMG further reasoned that because DZI, in its defense, maintained that it was entitled to a setoff of the amounts it owed under the Note for damages it claimed to have suffered, SMG was required to defend against all of DZI's counterclaims simply to enforce its own rights under the Note. On August 1, 2011 and August 5, 2011, DZI responded to SMG's Petition arguing that the Panel could not reconsider its decision to limit SMG's recovery only to those fees and costs "solely and strictly necessary" for the collection of the $12 million Note. DZI further contended that SMG's total fees and costs were inextricably intertwined with its defense of DZI's claims, not the collection of the Note.

(Compl. ¶ 22; Final Arbitration Award, November 14, 2011.)

### Amended Interim Award

On September 7, 2011, the Panel issued an Amended Interim Award concluding that SMG was entitled to all of its fees and costs incurred in the Arbitration, under the fees clause in the Note or, alternatively, the "prevailing party" provision in the Guaranty.  The Panel further held that a Final Award would be issued within fifteen (15) days to determine the specific amount of attorney's fees and costs owed to SMG, subject only to a further inquiry by the Panel into the reasonableness of SMG's fees.

On November 14, 2011, the Panel issued a Final Arbitration Award reducing SMG's requested attorney's fees and costs to $5,203,603.38.[7]  (Compl. ¶¶ 19-25; Final Arbitration Award, November 14, 2011.)

### Procedural History

Plaintiffs filed a Complaint in this Court requesting vacatur of the Interim Award and Amended Interim Award, alleging that the Panel had made incorrect findings of fact, disregarded settled Delaware law, misconstrued the parties' agreement, and exceeded its authority by amending the Interim Award.  Thereafter, Defendant filed a Motion to Dismiss Plaintiffs' Complaint and an Expedited Motion to Confirm the Arbitration Award arguing that Plaintiff's

---

[7]  A Panel of three former judges awarded SMG $35,712,956, which reflects an adjustment of the amounts owed by DZI pursuant to the Note and the Guaranteed Dividend, as well as the amount of interest on the distributions made by DZI under the Guaranty and credited against the total amount owed from the date of the Interim Award of Arbitrators to the date of the Final Award. This amount was to be paid within sixty (60) days of the Final Award. The Panel also awarded $5,203,630.38 for attorney fees and costs, to be paid within thirty (30) days of the Final Award. The Panel dismissed, with prejudice, all claims asserted by DZI.

Complaint is both procedurally improper and untimely.  Defendant further requests that this Court summarily confirm the arbitration award on the basis that there are no colorable substantive grounds for denial of confirmation and that any challenges to the arbitration award are time barred.  Upon the Panel's issuance of the Final Arbitration Award, Defendant also filed a motion to confirm the Final Arbitration Award based on the same grounds.

The Court will now address the pending motions.

## DISCUSSION

### I.   Defendant's Motion to Dismiss Plaintiff's Complaint

Before the Court can address the merits of Plaintiffs' challenges to the arbitration award, it must first determine whether Plaintiffs' request to vacate the arbitration award is procedurally proper and timely.  To initiate an action to vacate an arbitration award the party must make an application by motion and must serve the opposing party with notice of that motion within three months after the award is filed or delivered.  9 U.S.C.§§ 6, 10, 12; see also Smith, Breslin & Assoc.  v. Meridian Mortg. Corp., CIV. A.  96-424, 1997 WL 158119, at *2 (E.D. Pa. Mar. 31, 1997) aff'd sub nom. Smith, Breslin & Assoc., Inc. v. Meridan Mortg. Corp., 135 F.3d 766 (3d Cir. 1997).

### A.   Whether Plaintiffs Complaint to Vacate the Arbitration Award is Procedurally Proper

Defendant contends that Plaintiffs' complaint to vacate the arbitration award should be dismissed because Plaintiffs improperly filed a complaint, rather than a motion as required by the FAA.  The Third Circuit has made clear that, notwithstanding the language in the FAA, a district court has the authority to construe a complaint to vacate an arbitration award as a motion to

vacate so long as the construction does not prejudice the non-moving party. Oberwager v. McKechnie Ltd., 351 Fed. Appx. 708, 709 n.2 (3d. Cir. 2009)(noting that the district court appropriately exercised its discretion to consider [a] complaint as a motion to vacate the arbitration award); see also Oberwager v. McKechnie Ltd. No. 06-2685, 2007 U.S. Dist. LEXIS 90869, at * 12 (E.D. Pa. Dec. 11, 2007)(quoting Sacks v. Reynolds Sec., Inc., 193 U.S. App. D.C. 80, 593 F.2d 1234, 1239 (D.C. Cir. 1978)(reasoning that a complaint can be construed as a motion to vacate because "[t]he liberality of the . . . Federal Rules is such that an erroneous nomenclature does not prevent the court from recognizing the true nature of a motion.")

While the Court acknowledges that Plaintiffs did not seek to vacate the award in its proper form, its pleadings were sufficient, nonetheless, to alert Defendant of Plaintiffs' desire to vacate the arbitration award. Like the plaintiff in Oberwager, *supra*, here Plaintiffs' grounds for vacatur are essentially the same as those provided for in a motion to vacate an arbitration award under the FAA. Id. at * 14. Tellingly, Defendant's answer is written as if it were responding to a motion to vacate.[8] The Court therefore finds that Plaintiffs' complaint effectively provided Defendant with notice of the intended action, despite the filing deficiencies. As such, the Court will proceed as if the action was initiated by motion.

### B.    Whether Plaintiff Timely Sought to Have the Arbitration Award Vacated

As to the issue of timing, Defendant contends that Plaintiffs' failed to serve them with

---

[8]  Defendants also argue that construction of the complaint as a motion would result in unfair burden shifting. This same argument was rejected in Oberwager on the grounds that such a technical approach was not necessary because the result of the action was clear from the record. This Court now rejects Defendant's argument for that same reason.

notice of the complaint/motion to vacate within three months after the award.  Both parties are in agreement that the deadline to file and serve notice of the action was September 27, 2011.  The parties also agree that Plaintiffs emailed Defendant a copy of the complaint on September 26, 2011.  The parties disagree, however, as to whether email was a proper form of service, and thus whether the complaint was timely served.

Pursuant to U.S.C.A. § 12 service involving nonresidents [of the district within which the award was made] requires that notice of the application be served by a marshal within the district of the adverse party's location.   Federal Rules of Civil Procedure 5(b)(2)(E), however, allows for service by any other means, including electronic means, where the person served consents to the service in writing. Defendant contends that Plaintiffs' effort to email a courtesy copy of the complaint to SMG's counsel on September 26, 2011 did not cure Plaintiff's failure to comply with § 12 because the parties did not agree, in writing or otherwise, to accept electronic service. Defendant therefore submits that service was untimely because the arbitration award was issued on June 28, 2011 and proper service did not occur until October 18, 2011.

Again, the Court is not persuaded by Defendant's argument. Generally, email service of process is insufficient to provide adequate notice to the party served unless the other party has agreed in writing to accept electronic service. Oberwager, 2007 U.S. Dist. LEXIS 90869 at *12 (E.D. Pa. Dec. 10, 2007). Here, the underlying arbitration spanned over two years, during which time email was used as the parties' primary mode of communication without fault. The Court can find no reason why this same agreement should not apply to the present litigation since the action directly involves the Arbitration, regardless of the parties chosen venue.

The purpose of the consent requirement is to protect the party receiving service, as

legislatures could not assume that all parties have access to the world of electronic

communication. See Alberto v. Winner Auto., No. 01-116, 2004 U.S. Dist. LEXIS 21859, *13-

14 (D. Del. Oct. 27, 2004)(quoting Fed. R. Civ. P. 5, 2001 amendments, advisory comm. notes).

Defendant is not in need of such protection.  In fact, Defendant initiated contact with Plaintiffs

about the present litigation and  requested that Plaintiffs send them a copy of the Complaint via

email.  Thereafter, Defendant waited twelve days, well after the service deadline expired, before

notifying Plaintiffs that email was not an acceptable form of service.  If nothing else, such actions

suggest that Defendants wanted Plaintiffs to believe that service via email was proper so that

Plaintiffs would miss the filing deadline.  In any event, its clear that Defendant was aware of

Plaintiffs' challenge to the arbitration award.  Accordingly, the Court finds that service of the

Complaint/motion via email was both proper and timely.[9]

## II.      Defendant's Expedited Motion to Confirm Arbitration Award

Having concluded that Plaintiffs' filings are procedurally proper and timely, the Court

must now decide whether the arbitration award should be confirmed.  Defendant contends that

the award should be confirmed because there is no legal basis to vacate the award. Plaintiffs

respond to the contrary, contending that the arbitration award should be vacated based on five

grounds:  (1) the arbitration panel wrongly ignored the testimony of representatives from both

SMG and DZI that the change in the U.S. Army's methodology in awarding security contracts

---

[9]  Alternatively, Plaintiffs contend that service of the Complaint was proper and timely because the FAA does not require that the motion itself be served upon the opposing party, but only that the party receive notice of the motion. Plaintiffs further contend that Defendant consented to electronic service because defense counsel is a registered user of ECF.  Both arguments are clear misstatements of applicable law and/or the Court's policies and therefore do not merit discussion by this Court.

from sole source awards to competitively bid procurements constituted a material adverse effect under the Contribution Agreement; (2) the panel wrongly concluded that written notice was not required for any fact or circumstances of which certain DZI employees had actual knowledge prior to closing on the Contribution Agreement; (3) the panel wrongly disregarded settled Delaware law that a contracting party's actual knowledge does not excuse the other contracting party's breach of representation or warranty in the contract; (4) the panel wrongly ignored uncontested testimony that SMG's 2006 financial statements did not comply with GAAP because they failed to describe the nature and range of exposure faced by SMG to demobilize its guard force in Iraq; (5) the panel exceeded their powers in issuing the Amended Interim Award which modified their decision that SMG was entitled to recover reasonable attorney's fees "solely and strictly necessary" for collection of the Note and allowed SMG to recover all attorney's fees.[10]

Defendant counters that the Award meets the criteria for confirmation under the FAA, and that any defense that Plaintiff might assert lacks merit and or is time-barred.[11]

### A.   Whether There Exists a Legal Basis to Vacate the Arbitration Award

A court's function in confirming or vacating an arbitration award is extremely limited. Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., Ltd., 868 F.2d 52, 56 (3d Cir.

---

[10] Plaintiffs also seek vacatur based on the "manifest disregard" of law concept. However, in light of the Supreme Court's decision in Hall St. Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 584 (2008), which held that § 10 of the FAA provides the exclusive grounds for vacatur, it appears that manifest disregard in no longer a viable basis for vacating an award.  Accordingly, the Court will not address this argument.

[11] The Court will not address Defendant's contention that Plaintiff is time-barred from asserting a defense to the instant motion since the Court previously determined the timeliness of Plaintiffs' filings in the above discussion.

1989).  Generally, an award is enforceable "if its form can be rationally derived from either the agreement between the parties or the parties' submissions to the arbitrators and the terms of the arbitral award are not completely irrational."  Turkey Run Properties, L.P. v. Air Structures Worldwide, LTD., et al., No. CIV. 4:CV-09-0217, 2011 WL 2491518, at *6 (M.D. Pa. June 22, 2011)(citing AcandS, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 258 (3d Cir. 2006).  The Third Circuit has made clear that an award will be vacated only if there is "absolutely no support at all in the record justifying the arbitrator's determination."  See United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995).

The court need only find a colorable justification to confirm an arbitration award.  The court can not review the award to determine the merits of the arbitrator's decision; neither factual or legal error nor disagreement with the arbitrator's interpretation of the contract is grounds for reversal.  See Major League Umpires Assoc. v. American League of Professional Baseball Clubs, 357 F.3d 272, 279-80 (3d Cir. 2004)(citations omitted)(stating that even an arbitrator's improvident factfinding is entitled to deference and therefore will not serve as a basis for a court to deny enforcement of an award); see also  Fluke v. CashCall, Inc., 792 F. Supp. 2d 782, 786 (E.D. Pa. 2011)(citing Local 863 Int'l Bhd. v. Jersey Coast Egg Producers, 773 F.2d 530, 533 (3d Cir.1985)); Wilko v. Swain 346 U.S. 427, 436-37 (1953)("the interpretations of the law . . . are not subject, in the federal courts, to judicial review for error in interpretation").  Similarly, the court may not question the credibility of witness testimony or re-weigh evidence presented before an arbitration panel.  See Prudential Sec. Inc. v. Shaifer, No. 94-31, 1994 WL 242557, * 4 (E.D. Pa. May 27, 1994)(citation omitted).  The focus on review is on the arbitrator and the contract,

not on the facts underlying the dispute. <u>Kane Gas light & Heating Co. v. International Bhd. of Firemen and Oilers, Local 112</u>, 687 F.2d 673 (3d Cir.1982), *cert. denied,* 460 U.S. 1011 (1983).

Under the FAA, a district court may make an order vacating an award based on four exclusive grounds: 1) the award was procured by corruption, fraud, or undue means; 2) there was evident partiality or corruption in the arbitrators, or either of them; 3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient evidence shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or 4) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made. 9 U.S.C. §10(a); <u>see</u> <u>also</u> <u>Hall St. Associates, L.L.C.</u>, 552 U.S. at 584.

**B.    The Arbitration Panel Did Not Exceed Its Authority to Issue the Amended Interim Award**

Here, the sole issue before the Court is whether the arbitration panel exceeded its authority in issuing the amended interim award.  The Court need not address the other challenges brought forth by Plaintiffs, including any challenges to the arbitrators findings of facts, and interpretation of law and contract as such grounds are not among the exclusive grounds listed in the FAA, and thus are not subject to this Court's review.  <u>See</u> <u>also</u> <u>United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.</u>, 484 U.S. 29, 38 (1987).  Accordingly, the Panel's award totaling $35, 342,327 in damages is confirmed as there is no legal basis to deny its confirmation.

As to the arbitration panel's authority, Plaintiffs argue that once the Panel determined that Defendant was only entitled to recover reasonable attorney fees "solely and strictly necessary for collection of the Note," that it lacked authority to amend the Award to grant Defendant all

attorney fees. Plaintiffs base their argument on the doctrine of *functus officio*. Defendants argue that *functus officio* has no application, because the Panel made clear in its Award of June 28, 2011that it was not final with respect to attorney fees and costs owed to Defendant by Plaintiff.

*Functus officio* states that once an arbitration panel renders an award, its duties are discharged and it may not re-examine its decision. 9 U.S.C.A. § 10 (West).  This Court has further specified that the doctrine applies only when an arbitrator's task has "been fully accomplished," or where an arbitrator has "heard the case, made a final award, and disclosed it to both parties." Oberwager at *6.   There are, however, three exceptions to this doctrine: 1) an arbitrator can correct a mistake that is apparent on the face of the award, 2) where the award does not adjudicate an issue that has been submitted, because as to that issue, the arbitrator has not exhausted his function and it therefore remains open for subsequent determination, and 3) where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify. Colonial Penn Ins. Co. V. Omaha Indem.  Co., 943 F.2d 327, 332 (3d Cir. 1991). (citing La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569, 573 (3d. Cir 1967)).

Here, the Panel left the issue of attorney fees unsettled, explicitly stating that the issue remained outstanding, therefore the Panel is entitled to clarify this issue.  Furthermore, the Panel ordered that Defendant file a Fee Petition in the Award of June 28, 2011. Therefore, even if the Award was final as to attorney fees, *functus officio* would still not preclude Defendant from raising the issue, because its argument that all the issues in Arbitration were inextricably intertwined with its enforcement of the Note was raised in its July 2011 Fee Petition.

Furthermore, the Panel made it clear that no final decision had been made on the issue of attorneys' fees in its Award, thus, *functus officio* does not apply.

Plaintiffs have failed to prove that the arbitrators exceeded their authority, thus the Court will affirm the arbitration panel's award of all attorneys' fees and costs.   Additionally, the Court will summarily grant Defendant's motion to confirm the final arbitration award for the same reasons totaling $5,574,259.38 plus attorneys' fees and post judgment interest.

An appropriate Order follows.